# In the United States Court of Federal Claims

No. 20-849C

(Filed:  December 24, 2020)

|  |  |
|---|---|
| VSOLVIT, LLC,<br><br>                    *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>                    *Defendant*. | Solicitation bid protest; RCFC 52.1; administrative record supplementation; organizational conflicts of interest; unequal access to information; Federal Supply Schedule; small business set aside; rule of two; FAR Part 8. |

*Jon D. Levin*, Maynard, Cooper & Gale, PC, Huntsville, AL, for Plaintiff.  With him on the briefs were *W. Brad English*, *Emily J. Chancey*, and *Michael W. Rich*.

*Jimmy S. McBirney*, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.  With him on the briefs were *Jeffrey Bossert Clark*, Acting Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Misha Preheim*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

*SOLOMSON*, **Judge.**

In April 2020, the United States Department of Agriculture ("USDA" or the "Agency") issued Request for Quotes No. 12639520Q0130 (the "Solicitation"), an unrestricted solicitation under Schedule 70 of the General Services Administration ("GSA") Federal Supply Schedule ("FSS"), to obtain information technology ("IT") operations and maintenance support services for the Agency's Livestock Mandatory Price Reporting System ("LMPRS") and Market Analysis & Reporting Services ("MARS").  In this pre-award protest challenging the Solicitation, Plaintiff, VSolvit, LLC ("VSolvit"), claims that the USDA:  (1) failed to provide sufficient information in the Solicitation necessary for offerors to compete intelligently; (2) failed to address the possibility that the incumbent service provider had unfair access to relevant information; and (3) failed to consider whether a small business set aside was required before issuing the unrestricted Solicitation under the FSS.  VSolvit seeks permanent

injunctive relief precluding the USDA from awarding a contract pursuant to the Solicitation until VSolvit's concerns are remedied.  Defendant, the United States, counters that VSolvit fails to demonstrate that the Agency has violated any procurement statute or regulation in connection with the Solicitation.  Before the Court are Plaintiff's motions for judgment on the administrative record and to supplement the administrative record, as well as Defendant's cross-motion for judgment on the administrative record and opposition to Plaintiff's motion to supplement the administrative record.[1]

For the reasons explained below, the Court grants VSolvit's motion to supplement the administrative record, but denies VSolvit's motion for judgment on the administrative record.  The Court grants the government's cross-motion for judgment.

## I.  Factual And Procedural Background[2]

### A.  LMPRS And MARS

The USDA's Agricultural Marketing Service ("AMS") maintains two data collection and reporting systems, LMPRS and MARS, which the Agency utilizes to provide to "farmers, producers, and other agricultural businesses the information they need to evaluate market conditions, identify trends, make purchasing decisions, monitor price patterns, evaluate transportation equipment needs, and accurately assess movement."  ECF No. 16 at 138 (AR 130).[3]  LMPRS is congressionally mandated and used exclusively to collect and analyze data from the livestock and dairy industries.[4]  *Id.* at 29, 138–39 (AR 21, 130–31).  MARS is a voluntary collection of information on a broader range of commodities under the USDA's purview.  *Id.* at 138–39 (AR 130–31).  These systems are used to generate approximately 1000 market reports each day.  *Id.* at 23 (AR 15).

Historically, the USDA procured IT operations and maintenance support services for LMPRS and MARS under two separate contract vehicles.  *Id.* at 29 (AR 21).  Digital

---

[1] VSolvit also filed a motion to strike a portion of the government's motion for judgment on the administrative record, which the government opposed.  ECF No. 22, 27.  The Court denies that motion as moot, as the issue VSolvit raised does not impact the resolution of this case.

[2] The background section that follows constitutes findings of fact by the Court drawn from the Administrative Record ("AR").  *See, infra*, Section III.B.

[3] Throughout this opinion, the dual citations to the Administrative Record account for the discrepancy between the page number indicated in the Court's CM/ECF stamp on the PDF document and the AR page cite.

[4] *See* Livestock Mandatory Reporting Act of 1999, Pub. L. No. 106-78 § 911, 113 Stat. 1135, *codified at* 7 U.S.C. § 1635(1), (3); Mandatory Price Reporting Act of 2010, Pub. L. No. 111-239, 124 Stat. 2501, *codified at* 7 U.S.C. § 1637b.

Management, Inc. ("DMI"), a Maryland-based contractor, is the incumbent on both of these contracts. *Id.* at 408, 442, 615 (AR 401, 434, 607). DMI was awarded the contract for LMPRS in 2010 and, again, in 2015; DMI was awarded the contract for MARS in 2014 and, again, in 2018. *Id.* at 615 (AR 607). Because "LMPRS and MARS continue to be heavily integrated," the Agency recognized that cost savings could be realized "by consolidating the support contracts for both systems" into one support contract. ECF No. 16 at 17, 29 (AR 9, 21).

### B.    The Solicitation

On April 14, 2020, the USDA issued Solicitation No. 12639520Q0130. ECF No. 16 at 133 (AR 125). The Solicitation seeks to award a firm fixed price contract to provide IT support services, including "monitoring system performance, providing help desk support, maintaining system documentation, troubleshooting and implementing software solutions, as well as providing system upgrades to ensure continued uninterrupted operations" for LMPRS and MARS. *Id.* at 138 (AR 130). While the Agency initially had contemplated competing this requirement on an existing department-wide blanket purchase agreement, the Agency ultimately issued the Solicitation through the GSA FSS Schedule 70, using Federal Acquisition Regulation ("FAR") Part 8.4 procedures. *Id.* at 31, 615 (AR 23, 607). Both large and small business concerns were eligible to submit offers; the Solicitation did not restrict the competition to small businesses. *See id.* at 138 (AR 130).

As relevant to VSolvit's protest, the Solicitation differentiated between two different "environments": the technical (sometimes referred to as "testing") environment and the development environment. *Id.* at 140, 145 (AR 132, 137).[5] The Solicitation explained that the Agency hosts the LMPRS and MARS technical environments at the National Information Technical Center in Kansas City, Missouri. *Id.* at 140 (AR 132). The Agency further provided 130 pages of information regarding the LMPRS technical environment and 34 pages of information regarding the MARS technical environment. *Id.* at 201–331, 332–66 (AR 193–323, 324–58). Among other things, these documents included extensive information relating to the software and hardware construction, servers, platform, and web server setup and deployment of the

---

[5] In the IT context, "environment" refers to an entity's integrated collection of technology mechanisms, including infrastructure, software, hardware, and systems. *See* https://www.techopedia.com/definition/8989/production-environment (last visited Dec. 18, 2020).

technical environments of LMPRS and MARS.  *Id.* at 241–63, 332–41 (AR 233–55, 324–33).

Concerning the development environment, the Solicitation clarified that "[t]he Contractor shall be responsible for maintaining . . . the development environment hosted at their facility at no cost to the government" and provided as follows:

> The environment on which LMPRS/MARS is developed should be reasonably compatible with and configured to realistically represent the AMS production environment described in the Technical Environment to which it will be deployed.  The contractor shall fully test LMPRS/MARS *according to contract specifications in the contractor's environment* prior to deployment in the AMS environment.

*Id.* at 145, 165 (AR 137, 157) (emphasis added).  The Solicitation required the contractor to maintain its own development environment and explained that "[t]he contractor is not required to make this environment available to AMS to access unless it feels access would improve efficiency for supporting LMPRS/MARS."  *Id.* at 165 (AR 157).  The Agency made additional information available through a Zoom videoconference presentation on April 23, 2020 and responded to 135 questions from potential offerors during the question-and-answer period, which were later released to all potential offerors.  *Id.* at 406, 408–30 (AR 398, 400–22); *see id.* at 3 (Index to AR at 3) (noting the Agency's release of all the question-and-answers).  The Agency made clear to potential offerors that the development environment used by DMI, the incumbent contractor, is proprietary and that the Agency "does not hold new vendor responsible for what is in incumbent [development] environment."  *See id.* at 421 (AR 413).

Proposals were due May 18, 2020, but the closing date subsequently was extended to May 28, 2020 and then again to June 4, 2020.  *Id.* at 384, 395–96 (AR 376, 387–88).  USDA has yet to make an award determination.  *See id.* at 408 (AR 400).

## C.    Procedural History

VSolvit is a California-based small business technology services provider that offers, among other things, IT support services.[6]  ECF No. 12 ("Am. Compl.") at ¶ 3.  On May 5, 2020, VSolvit filed an agency-level protest with the USDA, arguing that the Solicitation should not have been issued on an unrestricted basis.  ECF No. 16 at 514–16 (AR 506–08).  Eight days later, on May 13, 2020, VSolvit sent another letter to the USDA, contending that the Solicitation failed to provide offerors with sufficient detail about the

---

[6] *See* https://www.vsolvit.com/ (last visited Dec. 21, 2020).

LMPRS and MARS environments in order to properly estimate costs.  *Id.* at  527–30 (AR 519–22).  Following VSolvit's unsuccessful efforts with the Agency, on May 26, 2020, VSolvit filed a pre-award bid protest with the Government Accountability Office ("GAO").  *Id.* at 545–53 (AR 537–45).

On July 13, 2020, before GAO rendered a decision, VSolvit filed its initial complaint against the United States, in this Court.  ECF No. 1.  That same day, VSolvit notified GAO of the newly filed bid protest with this Court, and, on July 15, 2020, GAO dismissed VSolvit's GAO protest due to a protest action "currently pending before a court of competent jurisdiction."  ECF No. 16 at 855, 867–68 (AR 847, 859–60).  On July 24, 2020, VSolvit filed an amended complaint in this case.  Am. Compl. at 1.  In the amended complaint, VSolvit claimed that the Agency:  (1) failed to include in the Solicitation "essential, routine information" about the existing development environment for offerors to compete on an intelligent and equal basis; (2) failed to address the possibility that DMI, the incumbent service provider, "has a competitive advantage and an unequal access organizational conflict of interest"; and (3) failed to consider whether a small business set aside was required before issuing the unrestricted solicitation under the FSS.  Am. Compl. at ¶¶ 37–55.  Accordingly, VSolvit seeks injunctive relief, preventing the Agency from awarding a contract under the Solicitation until the Agency remedies the alleged Solicitation defects.  *Id.* at 13.

On August 5, 2020, the government filed the Administrative Record in this matter.  ECF No. 16.  On August 26, 2020, VSolvit filed its motion to supplement the Administrative Record with the declaration of Mr. Harry Lee, ECF No. 18 ("Pl. Mot. to Supp. AR"), and its motion for judgment on the administrative record.  ECF No. 19 ("Pl. MJAR").  On September 9, 2020, the government filed its cross-motion for judgment on the administrative record, ECF No. 20 ("Def. MJAR"), and a response to VSolvit's motion to supplement the administrative record.  ECF No. 21 ("Def. Resp. to Pl. Mot. to Supp. AR").  On September 16, 2020, VSolvit filed its motion to strike portions of the government's cross-motion for judgment on the administrative record, ECF No. 22 ("Pl. Mot. to Strike"), a reply in support of its motion to supplement the administrative record, ECF No. 23 ("Pl. Reply in Support of Mot. to Supp. AR"), and a response in opposition to the government's cross-motion for judgment on the administrative record. ECF No 24 ("Pl. Resp. to Def. MJAR").  On September 23, 2020, the government filed its reply in support of its cross-motion for judgment on the administrative record.  ECF No. 25 ("Def. Reply in Support of MJAR").  On September 30, 2020, the government filed its response to VSolvit's motion to strike portions of the government's cross-motion for judgment on the administrative record.  ECF No. 27 (Def. Resp. to Pl. Mot. to Strike").  On October 1, 2020, the Court held oral argument.  ECF No. 26.

## II.    Jurisdiction And Standing

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870, provides this Court with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In a pre-award solicitation protest, an interested party is "'an actual or prospective bidder or offeror whose direct economic interest would be effected by the award of the contract.'" *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015) (quoting *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1299 (Fed. Cir. 2001)). A prospective bidder is one who, but for the alleged deficiencies in the procurement process, would have submitted a bid and diligently pursues its interests before the solicitation period ends. *CGI Fed.*, 779 F.3d at 1349–51; *see MLS-Multinational Logistic Servs., Ltd. v. United States*, 143 Fed. Cl. 341, 356–59 (2019).

VSolvit alleges that "it could and would have submitted a bid" but for its various concerns with the Solicitation as currently structured. Pl. MJAR at 5. VSolvit also has diligently pursued relief with the Agency, GAO, and, now, this Court, all prior to the June 4, 2020 due date for proposals. ECF No. 16 at 514, 545, 855 (AR 506, 537, 847). Accordingly, VSolvit is an interested party with standing to pursue this matter.

## III.    Standard Of Review

### A.    Pre-Award Solicitation Protests

In any action brought under Section 1491(b)(1), the Court reviews "the agency's actions according to the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706." *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019) (citing 28 U.S.C. § 1491(b)(4)). "In applying this standard of review, we determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Id.* (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)). "When a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the [agency's] decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir.

2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001)) (citation omitted).

**B.      Judgment On The Administrative Record And Motion To Supplement The Administrative Record**

Judgment on the administrative record, pursuant to RCFC 52.1, "is properly understood as intending to provide for an expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The rule requires the Court "to make factual findings from the record evidence as if it were conducting a trial on the record." *Id.* at 1354. The Court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *See id.* at 1356–57.

"'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Supplementing the existing record is appropriate, however, when "the omission of extra-record evidence precludes effective judicial review." *Id.* at 1380 (internal quotation omitted). This may include "tacit knowledge possessed by offeror and agency personnel of a highly technical and complex nature, requiring explication via affidavits or expert testimony" or "relevant information, contained in the procurement files or generally known in an industry or discipline, which was inappropriately ignored by an agency." *East West, Inc. v. United States*, 100 Fed. Cl. 53, 57 (2011) (citations omitted).

**IV.      The Court Grants VSolvit's Motion To Supplement The Administrative Record**

VSolvit seeks to supplement the Administrative Record with the declaration of Harry Lee ("Lee Decl."). Pl. Mot. to Supp. AR at 1. Mr. Lee is a former Acting Chief Information Officer with the U.S. Census Bureau, who during that time "reviewed requests for proposals and proposal responses for a number of mission-critical information technology systems and services . . . within the Department of Commerce." Lee Decl. at ¶ 2. Having reviewed the Solicitation and associated documents, Mr. Lee avers that the Solicitation was missing five categories of information that he "would have provided . . . so that bidders can submit a quality technical and cost proposal at low risk to the contractor and to the Agency," including:

> a. More technical information and detailed configurations on ALL environments, including the Development Environment;

      b.   Clarification if the contractor is also to provide a Development Environment to be used for Unit Testing and System Testing, and clarification as to where Integration Testing . . . and Environmental Testing will be performed;

      c.   Documentation on how configuration management and change management are to be performed so that "the environment on which LMPRS\MARS is developed should be reasonably compatible with and configured to realistically represent the AMS production environment." This requires ALL environments to be properly configured, managed and maintained/changed;

      d.   Documentation on how source code will be promoted from environment to environment prior to being released into production; and

      e.   Details on how to be able to access existing source code and test scripts from the incumbent during transition.

*Id.* at ¶¶ 5–7. Mr. Lee concluded that, "[w]ithout the above information, [he] feel[s] that there is insufficient documentation for a bidder to estimate the work to replicate and maintain a working development environment" and that "an incumbent contractor is at an unfair advantage." *Id.* at ¶ 8.

      VSolvit contends that "supplementing the record with [the Lee Declaration] is appropriate to assist the Court in understanding [the] technical or complex issues" associated with this IT support solicitation and to "identify the information an offeror would need to intelligently respond to the Solicitation." Pl. Mot. to Supp. AR at 2; *see* Pl. Reply in Support of Mot. to Supp. AR at 2 ("Protests like this one, which focus on the **absence of information**, create a natural tension between effective judicial review and the traditional makeup of the administrative record." (emphasis in original)). The government opposes VSolvit's motion, arguing that VSolvit has not met its burden "to demonstrate why the existing record is so 'technical or complex' as to preclude this Court's effective judicial review of the merits." Def. Resp. to Pl. Mot. to Supp. AR at 4.

      The Court grants VSolvit's motion to supplement the administrative record with the Lee Declaration. VSolvit's protest generally alleges that the Solicitation omitted information that was necessary for offerors to compete on an intelligent and equal basis. *See* Pl. MJAR at 6. The Court cannot conceive of a way, except in the rarest of cases, that a protestor plausibly could succeed on the merits of this particular type of solicitation

challenge without introducing extra-record evidence as to the information that the
protestor believes was missing from a solicitation and why such information was
necessary to enable offerors to compete on an intelligent and equal basis.  Put
differently, the Court is highly skeptical that an administrative record would ever
contain the evidence that would allow a protestor to succeed on the merits of this type
of solicitation challenge.[7]  *See Orion Intern. Tech. v. United States*, 60 Fed. Cl. 338, 343
(2004) ("[T]he record may be supplemented with . . . relevant information that by its
very nature would not be found in an agency record . . . .").  Further, given the
complexity and highly technical nature of the Agency's requirements for creating a
suitable environment for LMPRS and MARS, the Court finds that the Lee Declaration is
the type of testimony that may be offered to assist in understanding the issues here.  *See
Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 241–42 (2016) (admitting expert
declaration given the "highly technical nature" of the issues raised in the bid protest).
The Lee Declaration potentially provides additional insight into the type of
clarifications and documentation that an offeror would find necessary in preparing a
proposal in response to such a solicitation.  Accordingly, supplementation of the
Administrative Record with the Lee Declaration is appropriate.[8]

## V.   The Court Denies VSolvit's Motion For Judgment On The Administrative Record And Grants The Government's Cross-Motion For Judgment On The Administrative Record

VSolvit's motion for judgment on the administrative record presents three
claims:  (1) the Solicitation failed to "provide offerors the information needed to
compete on an intelligent and common basis," (2) the Agency failed to "investigate
and/or address the potential [organizational conflict of interest] arising from the DMI's
unequal access to information," and (3) the Agency failed to "conduct adequate market
research before issuing the Solicitation on an unrestricted basis."  Pl. MJAR at 5.  The
government, in its cross-MJAR, counters that (1) the Solicitation was "adequate to allow
offerors to compete on an intelligent and common basis," (2) the incumbent's

---

[7] Imagine, for a moment, the documents that an administrative record would need to contain
for a protestor to succeed on a challenge that a solicitation failed to provide the necessary
information to enable intelligent and fair competition.  An agency contracting official essentially
would, in writing, need to admit that the agency believed (or considered the possibility) that its
solicitation was deficient, that the agency considered providing more information to enable
intelligent and fair competition, and that the agency nevertheless, and without any rational
basis, decided against providing the information.

[8] To be sure, this is only a determination that the Lee Declaration is the kind of extra-record
testimony that the Court should consider, but that does not mean that the declaration
adequately supports the merits of the protestor's claims, which are discussed *infra*, Section V.A.

"knowledge of its current proprietary development environment [does not] create an impermissible OCI," and (3) the Agency properly issued the Solicitation through the FSS using FAR Part 8.4 procedures and thus did not need to consider whether to set aside the procurement for small businesses.  Def. MJAR at 5–6.  The Court agrees with the government.

    **A.**    **VSolvit Has Not Shown That The Solicitation Failed To Provide Offerors With Enough Information To Compete On An Intelligent And Equal Basis**

As a general rule, "'there is no legal requirement that a competition be based on specifications drafted in such detail as to eliminate completely any risk for the contractor or that the procuring agency remove all uncertainty from the mind of every prospective offeror.'"  *FirstLine Transp. Sec., Inc. v. United States*, 107 Fed. Cl. 189, 208 (2012) (quoting *Richen Mgmt., LLC*, B-406850, 2012 CPD ¶ 215, 2012 WL 3105118, *3 (Jul. 31, 2012)).  Only "[w]hen a solicitation lacks sufficient detail and permits each offeror to define the specification for itself, and to the extent they do so differently, the offerors are not competing on an equal basis."  *Glenn Def. Marine (Asia) PTE Ltd. v. United States*, 97 Fed. Cl. 568, 578 (2011).  This is an objective, not a subjective, test.  *Id.*

VSolvit first argues that, because "[t]he Solicitation expected the successful offeror to transfer the entire development environment to its own facility," the Solicitation lacked sufficient detail about DMI's development environment.  Pl. MJAR at 7.  According to VSolvit, the Solicitation should have included "the state of the [incumbent's development] environment; the testing and management processes the incumbent uses; the software used in the [incumbent's development] environment; the software versions the incumbent uses; and how to make all of that compatible with the Agency's environment, so it can be migrated to the Agency's servers."  *Id.*  VSolvit additionally contends that "[t]he Solicitation contained an incomplete list of the software DMI uses, . . . did not identify the applicable versions," and "did not describe the processes DMI uses to maintain and promote its environment, such as its quality control and testing processes."  *Id.*  From VSolvit's vantage point, the Lee Declaration further bolsters this point, as he asserts that the Solicitation was lacking sufficient information regarding the current development environment to allow for offerors to determine how to submit a reasonable proposal.  *Id.*

VSolvit's argument, and in turn the Lee Declaration, misunderstand the requirements of the Solicitation.  A successful offeror was required to create its *own* development environment that is "reasonably compatible with and configured to realistically represent the AMS production environment described in the Technical Environment to which it will be deployed," ECF No. 16 at 165 (AR 157), not to transfer DMI's existing environment to the successful offeror's facilities.  Indeed, in response to

one of the potential offeror's questions, the Agency expressly provided that "AMS does not hold new vendor responsible for what is in incumbent [development] environment."  *Id.* at 421 (AR 413).  For that reason alone, the Agency simply was not required to provide VSolvit or any other offerors with information regarding DMI's development environment.

VSolvit next, in its reply brief, offers various arguments in an attempt to demonstrate that the Solicitation lacked critical information about the Agency's technical environments, thereby preventing offerors from "determin[ing] the type of . . . environment necessary to perform the work."  Pl. Resp. to Def. MJAR at 6.[9]  None of these arguments are persuasive.

*First*, VSolvit suggests that a few of the questions submitted during the question-and-answer period demonstrate that the information in the Solicitation about the technical environments was "incomplete" and "confusing (at best)."  *Id.* at 6–7.  Two of those selected questions asked whether "the Government [could] please update the architecture diagrams to show exactly where each technology and tool is used" and whether the Agency could provide narrative explanations for "all [the technologies] mentioned in the solicitation."  *Id.* (quoting ECF No. 16 at 421–24 (AR 413–16)).  VSolvit also notes that in response to a third inquiry questioning how some of the technology combinations listed for MARS work together, the Agency directed the offeror to a chart that, in VSolvit's opinion, failed to address the problem.  *Id.* at 7.  But these possible ambiguities must be viewed in the greater context of the information about the technical environments that the Agency *did* provide to offerors.  As noted earlier, the Agency provided, as part of the Solicitation, 164 pages of detailed information regarding the LMPRS and MARS technical environments, respectively, including software and hardware construction, servers, platform, and web server setup and deployment of the technical environments.  ECF No. 16 at 201–331, 332–66 (AR 193–323, 324–58).  The Agency further supplemented this information through numerous question-and-

---

[9] VSolvit raises its arguments about the lack of information regarding the Agency's technical environments for the first time in its *reply brief*.  While the Federal Circuit has held that new arguments made by the moving party in a reply brief should be disregarded "[a]s a matter of litigation fairness" to the non-moving party, *see Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002), this rule is not jurisdictional but rather vests the trial court with discretion to consider the arguments.  *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 667 (2014).  As the government has responded to the new arguments in VSolvit's reply brief, *see* Def. Reply in Support of MJAR at 2–5, any possible unfairness to the non-moving party is eliminated, and thus the Court will address the merits of the arguments.

answers that addressed technical aspects of LMPRS and MARS.[10]  *Id.* at 408–30 (AR 400–22).  Considering all of this information, the Court must conclude that VSolvit's alleged uncertainties do not result in an impermissibly vague solicitation and are not of sufficient "magnitude to justify judicial intervention in this procurement process." *Firstline*, 107 Fed. Cl. at 211.

 *Second*, VSolvit contends that "[t]he Agency did not even provide version information for most of the software it identified" and asserts that "[c]ode that works on one version might destroy another."  *Id.* at 7.  VSolvit points to a table in the Administrative Record of "MARS Technical Components" that includes a "Version" column, in which the Agency placed several "X's" and alleges that the Solicitation is deficient because "[c]ode that works on one version might destroy another."  *Id.* (citing ECF No. 16 at 339–41 (AR at 331–33)).  VSolvit has failed to demonstrate, however, that any particular item of software included in the table even has multiple versions, and the Court cannot assume that to be the case absent proof, which VSolvit has the burden to provide or demonstrate using the record.[11]  *See Am. Contract Servs., Inc.*, B-256.196, 94-1 CPD ¶ 342, 1994 WL 263227, *1 (June 2, 1994) ("The mere allegation that a solicitation is ambiguous does not make it so.").[12]  And, even if certain software does have more than one version, VSolvit has not established that the lack of version information impaired VSolvit's ability to compete intelligently.  An IT programmer, who is reasonably skilled in the art of designing databases, plausibly would understand how to appropriately deploy the necessary code.  VSolvit's conclusory assertion that "[c]ode that works on one version might destroy another" is not evidence that helps VSolvit meet its "heavy

---

[10] *See Firstline*, 107 Fed. Cl. at 209–10 ("[T]he Court is aware of no affirmative rule–in either the FAR, statute, or case law–that an agency must make all information that is relevant to a given procurement available within the four corners of the solicitation.").

[11] The Court remains skeptical that certain software even has multiple versions.  For example, the Agency lists "SQL Server 2012 Enterprise Edition" and includes an "X" in the "Version" column.  ECF No. 16 at 339 (AR at 331).  It seems entirely plausible that the 2012 Enterprise Edition of SQL Server ***is*** the "Version" and, thus, there was no reason for the Agency to list that information again in the "Version" column.  In sum, simply pointing to a chart that includes "X's" does not establish that the "X's" are unreasonable.

[12] "Though GAO opinions are not binding on this court, . . . this court may draw on GAO's opinions for its application of this expertise."  *Allied Tech. Grp., Inc. United States*, 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011); *see Tech. Innovation All. LLC v. United States*, 149 Fed. Cl. 105, 140 n.6 (2020) ("GAO decisions are not binding on this Court but may be treated as persuasive authority in light of GAO's expertise in the bid protest arena.").

burden" that the Agency has acted arbitrarily or irrationally.[13]  *See Banknote*, 365 F.3d at 1351.

### B.    VSolvit Has Not Demonstrated An Unequal-Access-To-Information Organizational Conflict Of Interest

VSolvit further asserts that the Agency failed to exercise reasonable discretion in investigating or addressing a potential unequal-access-to-information organizational conflict of interest ("OCI") given that "DMI is the incumbent and has exclusive access" to all the IT information necessary for a successful proposal and that this failure "dooms this procurement."  Pl. MJAR at 8–10.

The FAR requires agencies to avoid conflicts of interest in the procurement process, including those based upon an offeror's unequal access to information that "is relevant to the contract but is not available to all competitors, and such information would assist that contractor in obtaining the contract."  FAR § 9.505(b).[14]  Critically, "[t]he mere existence of a prior or current contractual relationship between a contracting agency and a firm does not create an unfair competitive advantage."  *PAI Corp. v. United States*, 614 F.3d 1347, 1353–54 (Fed. Cir. 2010) (quotation omitted).  Rather, a protestor must provide "hard facts" whereas "a mere inference or suspicion of an actual or apparent conflict is not enough" to show that a procurement has been compromised by an OCI.  *Turner Const. Co., Inc. v. United States*, 645 F.3d 1377, 1387 (Fed. Cir. 2011) (quotation omitted).

In support of its unequal access OCI claim, VSolvit argues that "DMI is the incumbent and has **exclusive access** to the development environment for the LMPRS/MARS systems. . . . [Whereas o]ther offerors face significant risk by guessing at requirements."  Pl. MJAR at 9 (emphasis in original).  VSolvit further suggests that DMI has access to "the exact hardware, software, and configuration of the Agency's production environment . . . which gives it a substantial advantage over other offerors that must propose blindly while still remaining competitive against DMI's already-developed test environment."  Pl. Resp. to Def. MJAR at 10.  But this claim cannot succeed as this "attack is short on specifics and long on innuendo–the antithesis of what

---

[13] For example, the protestor should need to introduce evidence that a certain version of "NPM (Node Package Manager)" is only compatible with a certain version of "TWIG (Drupal 8 Templating Tool)" and that, by not providing the version information, the offeror cannot reasonably propose a solution.

[14] The FAR Part 9.5 also regulates two other groups of OCIs, referred to in the case law as "biased ground rules" and "impaired objectivity."  *See generally* Daniel I. Gordon, *Organizational Conflicts of Interest: A Growing Integrity Challenge*, 35 Pub. Cont. L.J. 25, 32 (2005).  VSolvit does not allege either of these other forms of OCI in their amended complaint.  *See* Am. Compl. at 11.

the decisional law requires." *ARINC Eng'g Servs., LLC v. United States*, 77 Fed. Cl. 196, 205 (2007). Similar to VSolvit's first claim, VSolvit has failed to provide this Court with specific evidence of non-public information to which DMI has access that provides DMI with an unfair competitive advantage. The Agency provided all offerors extensive information, 164-pages worth, about the LMPRS and MARS technical environments and further sought to clarify any uncertainties through the question-and-answer period. ECF No. 16 at 201–331, 332–66 (AR 193–323, 324–58) (information included in Solicitation); *id.* at 408–30 (AR 400–22) (question-and-answers). Conclusory assertions and speculation about possible unequal access are insufficient. *See AAR Mfg., Inc. v. United States*, 149 Fed. Cl. 514, 529 (2020); *cf. Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 510 (2018) (emphasizing that unequal access OCI must be reflected by evidence in the administrative record). Lacking "hard facts," this Court cannot conclude that DMI "had the kind of specific, sensitive information that would create an OCI," *Sys. Plus, Inc. v. United States*, 69 Fed. Cl. 757, 772 (2006), or that the Agency acted in an arbitrary and capricious manner by not taking steps to mitigate an alleged conflict of interest. *See Aegis Tech. Grp., Inc. v. United States*, 128 Fed. Cl. 561, 575 (2016).

Moreover, upon review of VSolvit's briefs, its real complaint appears to be that the incumbent simply is better positioned for the procurement at issue. While this might be a legitimate business concern for VSolvit, our case law is clear that "mere incumbency does not give rise to an [OCI]" and "that the government need not forego the benefits of incumbency in ensuring a level playing field." *ARINC Eng'g Servs.*, 77 Fed. at 203–04, 206; *see Sys. Plus*, 69 Fed. Cl. at 771 ("Incumbent status, without more, typically does not constitute 'unequal access to information' for purposes of showing an OCI."). GAO decisions similarly confirm that "the government is not necessarily required to equalize competition to compensate for such an advantage, unless there is evidence of preferential treatment or other improper action." *Superlative Tech., Inc.*, B-415405.2, 2018 CPD ¶ 19, 2018 WL 585679, *5 (Jan. 5, 2018); *see also Lovelace Sci. & Tech. Servs.*, B-412345, 2016 CPD ¶ 23, 2016 WL 359122, *8 (Jan. 19, 2016); *QinetiQ N. Am., Inc.*, B-405008.2, 2011 CPD ¶ 154, 2011 WL 357875, *9 (July 27, 2011). Nothing in VSolvit's allegations even suggests that DMI has accessed proprietary government information "without proper authorization" or "source selection information" that is unavailable to other offerors. *Superlative Tech., Inc.*, B-415405.2 at *4 (alterations omitted).

The Court recognizes that DMI, as the incumbent for LMPRS and MARS, may possess a better understanding of the government's technical environments based on DMI's past experience supporting LMPRS and MARS, but this is merely an "inherent incumbent advantage" that the FAR does not prohibit. *M7 Aerospace, LLC*, B-415252.5, 2018 CPD ¶ 387, 2018 WL 6191073, *10 (Nov. 9, 2018); *see Lovelace Sci. & Tech. Servs.*, B-412345 at *8 ("The existence of an advantage, in and of itself, does not constitute preferential treatment by the agency, nor is such a normally occurring advantage

- 14 -

necessarily unfair.").  In sum, "[w]hile difficulties sometimes may be encountered in distinguishing between the benefits of incumbency and unequal access of the sort that gives rise to an [OCI], such is not the case here–as Locke once said, '[t]hough no man can draw a stroke between the confines of night and day, still light and darkness are on the whole tolerably distinguishable.'"  *ARINC Eng'g Servs.*, 77 Fed. at 206 (third alteration in original).

### C.    The Agency Was Not Required To Determine Whether The Solicitation Should Have Been A Small Business Set-Aside Before Using The FSS

Finally, VSolvit claims that the Agency was required, pursuant to FAR 19.502-2(b) ("Rule of Two"), to conduct market research to determine whether the solicitation should be structured as a small business set aside under a different contract vehicle *before* deciding to use an unrestricted FSS solicitation.  *See* Pl. MJAR at 10–12 (citing FAR 10.001(a)(2), (3)(viii) ("Agencies shall . . . [c]onduct market research appropriate for the circumstances . . . [and u]se the results of market research to . . . [d]etermine whether the acquisition should utilize any of the small business programs in accordance with part 19[.]")); Pl. Resp. to Def. MJAR at 11.  Although VSolvit concedes, as it must, that once the Agency decided to use the FSS, it was not required to set aside the procurement for small businesses because FAR 8.404(a) provides that the Rule of Two does not apply to FSS solicitations, VSolvit contends that the Rule of Two framework requires that the Agency reasonably consider alternative contract vehicles *at the beginning* of the procurement process.  *Id.*  Accordingly, VSolvit concludes that given the Agency's prior usage of small business set-asides for supporting IT staffing requirements for LMPRS and MARS, "[h]ad the Agency performed a reasonable analysis, it would have concluded that this work's small business history militated in favor of a set aside for small businesses."  Pl. Resp. to Def. MJAR at 11.

This argument fails, however, because, as this Court recently noted, "where the FAR intends to make the Rule of Two *entirely inapplicable* to the selection of a particular procurement vehicle, the FAR knows how to do so."  *Tolliver Grp., Inc. v. United States*, – – Fed. Cl. ––, 2020 WL 7022493, *37 (Nov. 30, 2020) (emphasis added).  In *Tolliver*, this Court explained that FAR Part 8 explicitly exempts agencies from conducting the Rule of Two analysis before placing orders against FSS contracts.  *Id.*  Thus, "there is no requirement for an agency to apply the Rule of Two *prior* to an agency's electing to use a FAR Part 8 FSS procurement, although the agency has discretion to set-aside such procurements after deciding to utilize FAR Part 8."  *Id.* (emphasis in original).  Only when an agency intends to select a contract vehicle that does not have an exemption similar to FAR 8.404(a), does the Rule of Two set-aside determination apply.  *Id.* at *32– *34, *37 n.64.  GAO similarly has observed that there is no "requirement on agencies to first evaluate whether a solicitation should be set aside for small businesses before

purchasing the goods or services through the FSS program." *Walker Dev. & Trading Grp., Inc.*, B-411357, 2015 CPD ¶ 217, 2015 WL 4116859, *2 (July 8, 2015).

**D.    VSolvit's Request For Injunctive Relief Is Denied**

In evaluating whether permanent injunctive relief is warranted in a particular case, *see* 28 U.S.C. § 1491(b)(2), the Court must consider:  (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff has shown it will suffer irreparable harm in the absence of an injunction; (3) whether the balance of the harms favors injunctive relief; and (4) whether an injunction serves the public interest.  *PGBA v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

As VSolvit has failed to succeed on the merits of its various claims in this case, the Court does not evaluate the remaining injunctive relief criteria.  *See Phoenix Mgmt., Inc. v. United States*, 127 Fed. Cl. 358, 371 (2016) (denying injunctive relief based solely on the plaintiff's failure to succeed on the merits).

*C*ONCLUSION

For all of the above reasons, the Court **GRANTS** Plaintiff's motion to supplement the administrative record, but **DENIES** Plaintiff's motion for judgment on the administrative record.  The Court **GRANTS** the government's cross-motion for judgment.  Accordingly, Plaintiff's motion to strike portions of the government's cross-motion for judgment on the administrative record is **DENIED** as moot.  The Clerk shall enter JUDGMENT for Defendant.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Judge